IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WP COMPANY LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY,<br><br>*Defendant.* | Civil Action No. 23-3333 (TJK) |

### DECLARATION OF CHRISTINA BIANCO

Pursuant to 28 U.S.C. § 1746, I, Christina F. Bianco, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge:

(1)     Since October 23, 2022, I have held the position of Supervisory Government Information Specialist (Supervisor) in the Freedom of Information Act (FOIA) and Privacy Office for Investigations (FOI/P) of the Defense Counterintelligence and Security Agency (DCSA).  As a supervisor, among other things, I am responsible for overseeing the processing of incoming requests for information made under the FOIA.  In this capacity, I perform in-depth analysis of each FOIA request and verify that all information responsive to that request was obtained from custodian offices within the DCSA.  I analyze the responsive records pursuant to FOIA laws, Department regulations and policies to ensure full responsiveness in our productions. The statements in this declaration are based upon my personal knowledge and upon my review of information available to me in my official capacity.

(2)     I am familiar with the FOIA request made by the Washington Post, Plaintiff, through

national security reporter, Alex Horton, for the investigative and adjudicative records of Airman First Class (A1C) Jack Teixeira. The purpose of this declaration is to address the searches conducted by FOI/P in response to the Plaintiff's FOIA request and the withholding of A1C Teixeira's investigative and adjudicative records pursuant to FOIA exemptions 6 and 7(c), 5 U.S.C §552 (2018).

## REQUEST OF RECORD TO DCSA

(3)  On August 8, 2023, Plaintiff submitted a FOIA request to FOI/P for the investigative and adjudicative files of A1C Jack Teixeira and the name of the company, and investigator, that conducted his DCSA background investigation. The Plaintiff's August 8, 2023, requester letter is attached as **Exhibit A.** This request was received by FOI/P on August 9, 2023, and assigned tracking number DCSA-B 23-10987.

(4)  In response to this request, a FOI/P Government Information Specialist, familiar with the subject matter requested, searched the Personnel Investigations Processing System (PIPS) by A1C Teixeira 's name and SSN for any investigative records the DCSA might maintain on him. This system was searched because investigative records of the type requested by the Plaintiff are stored in that system and can be accessed by a subject's SSN. This search produced a complete copy of the subject's investigative file totaling eighty-nine (89) pages. A search was also conducted of the Defense Information System (DISS) and the Defense Index of Investigations (DCII) system for adjudicative records maintained on A1C Teixeira. These systems have been designated as personnel vetting systems and would contain those adjudicative records requested by the Plaintiff. The DCII is an automated central index that identifies investigations conducted by DoD investigative     agencies. These systems

were searched by the Plaintiff's Social Security number (SSN), which was calculated to locate those inter-agency and intra-agency communications and those records upon which the denial or revocation of his security clearance was based. The records in these systems are retrievable by the SSN of the individual on whom they are maintained.  A search of the DISS system yielded twenty (20) documents responsive to the Plaintiff's request.  A search of the DCII did not produce any responsive records.

(5)  FOI/P responded to Plaintiff's FOIA request on September 14, 2023, withholding one-hundred and nine (109) pages in full pursuant to FOIA Exemptions 6 and 7(c). The September 14, 2023, FOI/P response letter is attached as **Exhibit B.**  On September 21, 2023, Plaintiff appealed FOI/P's September 14, 2023, response noting a "strong public interest" in AIC Teixeira's investigative file.

## DESCRIPTION OF RECORDS RESPONSIVE TO PLANTIFF'S REQUESTS

(6)  The DCSA completed a Tier 5 (T5) background investigation on A1C Teixeira on May 4, 2020, for the U.S. Department of the Air Force, Air National Guard.  A Special Agreement Check (SAC) was also completed on him on February 9, 2020.  The T5 is a total of eighty-eight pages (88) and contains a Case Closing Transmittal (CCT) and other DCSA administrative processing forms; a copy of the Electronic Questionnaires for Investigations Processing (e-QIP) signed by A1C Teixeira on November 18, 2019; a Report of Investigation (ROI) containing interviews conducted under oath on March 11, 2020, and April 29, 2020, and the results of various searches typically conducted during a T5 to include: educational records, residential history, employment history, local law enforcement checks, medical records, etc . . . .  The SAC consists of one (1)

page and contains the results of an inquiry made with the Federal Bureau of Investigation for any arrest records they might maintain on A1C Teixeira. The DCSA also identified twenty (20) pages of adjudicative records responsive to the Plaintiff's request to include a two (2) page internal working document, a memorandum sent to, and received from, the United States Air Force, a "read-ahead' memorandum containing two open-source news articles and a one (1) page incident report.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

### FOIA EXEMPTIONS 6 and 7(c)

(7)  FOIA exemption (b)(6), 5 U.S.C. §552(b)(6), permits the Government to withhold information about individuals when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Similarly, FOIA exemption 7(c), 5 U.S.C. §552(b)(7)(c), protects from release information contained in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy. As they are conducted "to determine whether there are any law enforcement issues" in the applicants "past that could affect [their] ability to carry out the position," it is well established that DCSA background investigations are conducted for "law enforcement purposes" and fall within the ambit of FOIA exemption (b)(7). *Mittleman v. Office of Personnel Management,* 76 F.3d1240, 1243 (D.C. Cir. 1999) (per curiam).

(8)  FOI/P regularly applies FOIA exemptions (b)(6) and (b)(7)(c) when considering the release of investigative and adjudicative files in response to third-party requests. In doing so, FOI/P employs a balancing test when determining the applicability of both exemptions to the records requested, weighing the privacy interests of the individuals

therein against the public's interest in the requested information. The DCSA regularly withholds background investigations and adjudicative files in full as the information contained therein is highly personal to the subject and typically includes their Personal Identifiable Information (i.e., Social Security Number, financial records/account numbers, medical records, education records, etc. . .), the names and contact information of relatives and personal references, the results of national agency and law checks typically conducted, the details of interviews conducted with sources the disclosure of which might not only create unwarranted invasion of personal privacy in the subject in the present but also impair the DCSA's ability to obtain such information in the future if sources believed they could not speak candidly as the information provided might be released to the public. FOI/P considered the charges A1C Teixeira is facing and the public's interest in the contents of those files and determined the probative value of releasing case specific information, such that it might shed light on the DCSA's execution of its statutory duties, does not outweigh the significant privacy interests he retains therein. To the contrary, FOI/P determined A1C Teixeira's privacy interests were heightened as any successful defense he might make to the charges he faces would be hindered if portion of his file were released and subject to public speculation. A1C Teixeira retains a significant and legitimate personal privacy interest in the materials requested by the Plaintiff and, given those accusations made against him, there is a reasonable probability of future harassment or a risk of harm or reprisals to him, and any individuals named therein, if any portions of those materials were released to be publicly disclosed.

(9)   FOI/P conducted the requisite foreseeable harm analysis under the FOIA and for those reasons mentioned determined that the disclosure of A1C Teixeira's investigative and

adjudicative files would cause him an unwarranted invasion of personal privacy of the type FOIA exemptions (b)(6) and (b)(7)(c) are meant to protect against.

## FOIA EXEMPTION 3

(10) The DCSA regularly withholds that information within personnel vetting records specifically exempt from disclosure by law. 5 U.S.C. § 552(b)(3). The Bank Secrecy Act provides that "a [Bank Secrecy Act] report and record of reports are exempt from *search and disclosure* under section 552 Title 5, and may not be disclosed under any State, local tribal, or territorial "freedom of information", "open government", or similar law" 31 U.S.C. §5319 (emphasis added); *Ortiz v. DOJ,* No. 12-1674, 2014 WL 4449686, at *4 (D.D.C. Sept. 9, 2014; *Rosenberg v. ICE,* 13 F.Supp. 3d 92, 114-15 (D.D.C. 2014). Pursuant to this statutory authority, FinCEN promulgated a regulation exempting BSA records from FOIA disclosure. 31 C.F.R. §103.54.

(11) Although not applied by FOI/P in the September 14, 2023, response, FOIA exemption (b)(3) may be applied to the results of those searches the DCSA conducts of Bank Secrecy Act reports maintained on the A1C Teixeira by FinCEN. By agreement and on behalf of FinCEN, the DCSA applies FOIA exemption (b)(3) to any search results returned, positive or negative, as those records are exempt from search and disclosure under the Bank Secrecy Act and regulations promulgated by the FinCEN thereunder. The application of FOIA exemption (b)(3) is limited to the results of searches made of FinCEN indices. The DCSA is statutorily prohibited from releasing any details regarding searches made of FinCEN Bank Secrecy Act indices.

(12) It is foreseeable that to disclose any information DCSA redacts on behalf of FinCEN pursuant to FOIA exemption by (b)(3) would constitute a harm of which that exemption was enacted to protect, namely, information would be released that is

statutory protected from release under the Bank Secrecy Act and those relevant FinCEN regulations promulgated thereunder. FOIA exemption (b)(3) was therefore, properly applied.

## FOIA EXEMPTION 5

(13) Although not applied by FOI/P, certain portions of A1C Teixeira's adjudicative records are exempt from release pursuant to FOIA exemption (b)(5). FOIA exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C §552(b)(5). FOIA exemption (b)(5) protects not only those predecisional deliberative process type communications but also incorporates those privileges typically found in civil discovery to include attorney-client privilege. This information consists of predecisional deliberative communications and advisory opinions within intra-agency working documents maintained as part of A1C Teixeira's adjudicative file. Any final determination regarding A1C Teixeira's fitness to maintain a security clearance would not alter the predecisional character of those communications.

(14) The requisite foreseeable harm analysis has been conducted in considering the application of FOIA exemption (b)(5). FOI/P has determined that releasing those portions of the A1C Teixeira's adjudicative records containing predecisional deliberative process communications withheld would inhibit the future exchange of such information if the adjudicative personnel undertaking those deliberations believed the comments and/or recommendations they make might be released to the subject of that adjudication or, as in this case, the public at large. Any uncertainty in the confidentiality of the information exchanged will create a chilling effect in the adjudicative process undermining that discretion committed to the DCSA discretion

pursuant to *Department of Navy v. Egan* to properly determine an applicant's fitness to maintain a security clearance. *See* 484 U.S. 518 (1988).  Furthermore, the recommendations and comments therein may not    be the agency's final position on the adjudication of that individual and to release that information might create confusion undermining the vetting process.  It is reasonable, therefore, to believe that the application of FOIA exemption (b)(5) to those predecisional communications within the A1C Teixeira's adjudicative file prevents type of harm that exemption was enacted to protect against.

FOIA EXEMPTION 7(e)

(15)  Although not applied by FOI/P, certain portions of A1C Teixeira's investigative file are exempt from release pursuant to FOIA exemption (7)(e).  DCSA background investigations commonly include the results of a search conducted with the FBI though their National Name Check Program (NNCP), now known as the Enterprise Vetting Center – Branch 1 Records (EVC-B1), commonly referred to as a "name check" search.  By agreement with the FBI and on their behalf, the DCSA redacts the results of the name check search regardless of whether the result is positive (i.e, denominated as "Record") or negative (i.e, denominated as "No Record").  The exemption asserted by the FBI as the basis for nondisclosure of portions of documents is FOIA Exemption 7(E); 5 U.S.C. § 552 (b)(7)(E).  FOIA exemption (b)(7)(E) protects those "law enforcement records [which] . . . would disclose techniques and procedures for law enforcement investigations, or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  Disclosing the results of the search the DCSA conducted with the FBI would risk circumvention of the law,

whether the name check result is positive or negative, as it would reveal whether an individual is of an investigative interest to the FBI, and also that conduct of the subject that might be of investigative interest (were there hypothetically such conduct) has gone undetected by the FBI, thereby providing some insight to the type or scope of FBI investigations and risk circumvention of the law.

(16) The requisite foreseeable harm analysis has been conducted in the application of exemption (b)(7)(e). For the reasons stated above, disclosure would risk circumvention of the law by providing some insight to the type or scope of FBI investigations. Therefore, the foreseeable harm to the interests protected by exemption (b)(7)(e) would result from disclosure of the redacted information.

## SEGREGATION OF NON-EXEMPT INFORMATION

(17) The DCSA has conducted a page-by-page and line-by-line review of the records at issue in this Declaration for reasonable segregation of non-exempt information. No meaningful information from the records withheld can be made without disclosing information entitled to protection under the FOIA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on this 17th day of May, 2024, at Boyers, Pennsylvania.

_____

Christina F. Bianco