**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**WP COMPANY LLC
d/b/a THE WASHINGTON POST,**

  **Plaintiff,**

   **v.**

**DEFENSE COUNTERINTELLIGENCE AND
SECURITY AGENCY,**

  **Defendant.**

</td><td>

**Case No. 1:23-cv-3333**

</td></tr>
</table>

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 4

I.     Teixera's Leaks, Arrest and Prosecution ........................................................... 4

II.    The Post's FOIA Request ................................................................................... 7

III.   DCSA's Response and the Post's Administrative Appeal .................................... 7

IV.    This Lawsuit ..................................................................................................... 8

ARGUMENT .................................................................................................................... 9

I.     STANDARD OF REVIEW ................................................................................. 9

II.    DCSA'S WITHHOLDING RESPONSIVE RECORDS IS UNJUSTIFIED ................... 10

       A.     The Teixeira Records Cannot Be Withheld Under Exemptions 6 and
              7(C) ..................................................................................................... 10

       B.     The Records Cannot Be Withheld Under Exemptions 5, 7(E) or 3 ....................... 16

              i.     DCSA Has Failed to Justify Its Withholdings Under
                     Exemption 5 ................................................................................ 16

              ii.    Exemption 7(E) Does Not Apply .................................................. 18

              iii.   To the Extent Exemption 3 Applies, It Must Be Applied
                     Narrowly ..................................................................................... 20

       C.     DCSA Did Not Meet Its Burden to Demonstrate Foreseeable Harm ................... 20

       D.     DCSA Withheld Reasonably Segregable, Non-Exempt Information .................. 23

CONCLUSION ................................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100Reporters LLC v. DOJ,*
  248 F. Supp. 3d 115 (D.D.C. 2017) .......................................................11

*\*ACLU v. DOJ,*
  655 F.3d 1 (D.C. Cir. 2011) ...........................................................2, 11, 12, 14

*\*American Oversight v. Department of Homeland Security,*
  No. 1:21-cv-3030-TNM, 2023 U.S. Dist. LEXIS 156688 (D.D.C. Sep. 5, 2023)..................20

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..............................................................................9

*\*Bartko v. DOJ,*
  898 F.3d 51 (D.C. Cir. 2018) ..................................................................9, 14

*Citizens for Responsibility & Ethics in Washington v. DOJ,*
  746 F.3d 1082 (D.C. Cir. 2014) ...............................................................14

*Coastal States Gas Corp. v. Department of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ................................................................17

*Center For Investigative Reporting v. U.S. Customs & Border Protection,*
  436 F. Supp. 3d 90 (D.D.C. 2019) ............................................................21

*DOJ v. Reporters Committee for Freedom of the Press,*
  489 U.S. 749 (1989)...........................................................................11

*EPIC v. Department of Homeland Security,*
  926 F. Supp. 2d 311 (D.D.C. 2013) ..........................................................23

*FCC v. AT&T Inc.,*
  562 U.S. 397 (2011)...........................................................................15

*Hertzberg v. Veneman,*
  273 F. Supp. 2d 67 (D.D.C. 2003) ...........................................................23

*Humane Society of United States v. Animal & Plant Health Inspection Service,*
  386 F. Supp. 3d 34 (D.D.C. 2019) ...........................................................15

*Institute for Justice v. IRS,*
  547 F. Supp. 3d 1 (D.D.C. 2021) ............................................................15

*Judicial Watch, Inc. v. Department of Commerce,*
  375 F. Supp. 3d 93 (D.D.C. 2019) ...........................................................21

*Larson v. Department of State*,
565 F.3d 857 (D.C. Cir. 2009) ....................................................................................9

*Lawyers' Committee for Civil Rights Under Law v. DOJ*,
No. 18-cv-167, 2020 U.S. Dist. LEXIS 246100 (D.D.C. Oct. 16, 2020) ...............17

*\*Leopold v. DOJ*,
94 F.4th 33 (D.C. Cir. 2024) ..................................................................9, 10, 21, 22

*\*Mayer Brown LLP v. IRS*,
562 F.3d 1190 (D.C. Cir. 2009) ..............................................................................19

*\*Mead Data Central v. Department of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ................................................................................23

*Mittleman v. Office of Personnell Management*,
76 F.3d 1240 (D.C. Cir. 1996) ................................................................................11

*\*National Security Counselors v. CIA*,
960 F. Supp. 2d 101 (D.D.C. 2013) ........................................................................17

*Pinson v. DOJ*,
236 F. Supp. 3d 338 (D.D.C. 2017) ........................................................................21

*Reporters Committee for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ...................................................................................21

*Roth v. DOJ*,
642 F.3d 1161 (D.C. Cir. 2011) ..............................................................................13

*Russell v. Department of Air Force*,
682 F.2d 1045 (D.C. Cir. 1982) ..............................................................................18

*Stern v. FBI*,
737 F.2d 84 (D.C. Cir. 1984) ..................................................................................12

*Summers v. DOJ*,
140 F.3d 1077 (D.C. Cir. 1998) ................................................................................9

*Wilderness Society v. Department of Interior*,
344 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................23

*Wolfe v. Department of Health & Human Services*,
839 F.2d 768 (D.C. Cir. 1988) ................................................................................18

**Statutes**

5 U.S.C. § 552 ............................................................................................11, 18, 21, 23

18 U.S.C. § 793 .................................................................................................................6

## PRELIMINARY STATEMENT

In what federal prosecutors would later call "one of the largest leaks of classified information in United States history," a user of the social media platform Discord leaked to fellow users of his servers in 2022 and 2023 hundreds of classified documents and a trove of top-secret information regarding the Russian-Ukrainian war, U.S. interactions with its allies, and other sensitive topics.  After a fellow Discord user began posting some of that material elsewhere online, authorities traced the leaks to Jack Teixeira, then a 21-year-old cyber defense operations journeyman in the Massachusetts Air National Guard whose Top Secret/Sensitive Compartmented Information security clearance gave him access to some of the military's most highly classified materials.  Teixeira now awaits sentencing in the U.S. District Court for the District of Massachusetts after pleading guilty to six felony violations of the Espionage Act.

The facts that emerged as Teixeira's prosecution progressed raised troubling questions about how and why Teixeira obtained access to classified information in the first place. Prosecutors revealed that Teixeira had been suspended from his high school and investigated by local police after making remarks to other students about Molotov cocktails, guns in school, and racial threats.  The incident was so disturbing that those same local authorities repeatedly denied Teixeira's applications for a firearms permit – until he cited his Air Force enlistment and security clearance as factors showing he had reformed.  In motions seeking to keep Teixeira detained before trial, prosecutors depicted Teixeira as having manipulated his background investigator into approving his security clearance by downplaying the high school incident and concealing his online racist rants and fascination with mass shootings.

Teixeira's security breach, and whether any government failures contributed to it, are issues of the utmost public concern that naturally drew extensive nationwide news coverage.  *See*

1

Compl. ¶ 12 & nn. 6-8 (Dkt. 1).  To further its in-depth coverage of this serious national security

breach, Plaintiff WP Co., LLC, d/b/a *The Washington Post* (the "*Post*") filed a Freedom of

Information Act request with the Defense Department agency that conducts background checks

for security clearances, seeking records that could show if there were shortcomings in Texiera's

background investigation, as prosecutors' public filings in the criminal case have indicated.  *See

id.* ¶¶ 13-14.

Defendant Defense Counterintelligence and Security Agency ("DCSA") denied the

*Post*'s request, withholding more than 100 pages of responsive public records in their entirety.

*See* Mem. in Supp. of Def.'s Mot. for Summary Judgment ("DCSA Mem.") at 3.  This

withholding runs counter to FOIA's purpose "to open agency action to the light of public

scrutiny" and further "the citizens' right to be informed about what their government is up to,"

including – and especially – when the government makes embarrassing and harmful mistakes.

*ACLU v. DOJ* ("*ACLU I*"), 655 F.3d 1, 6 (D.C. Cir. 2011) (cleaned up).  Through this lawsuit,

the *Post* is challenging DCSA's improper denial of its request under FOIA and seeking to

vindicate the public's right of access to these records.  DCSA has failed to justify its blanket

withholdings for six principal reasons.

**First**, DCSA asserts that it may withhold these public records pursuant to FOIA

Exemptions 6 and 7(c), which are intended to protect personal privacy.  But DCSA has not

justified its invocation of the privacy exemptions.  The agency failed to properly balance any

personal privacy interests against the strong public interest in obtaining the information these

records contain.  Now that he has pleaded guilty and been convicted of six felonies for

unlawfully leaking government secrets, Teixeira's privacy interest in the contents of his security

clearance background investigation has evaporated – or, at most, diminished so far as to be

negligible.  Any privacy interests of other individuals identified in the records can be served by redacting personally identifying information rather than withholding the records in full.  The extent of DCSA's invocation of privacy with little or no thought is clear from its decision to withhold copies of <u>two publicly available news articles</u>, which by their very nature cannot possibly be withheld under these exemptions.

**Second**, DCSA belatedly invokes the deliberative process privilege under Exemption 5, which allows withholding of pre-decisional and deliberative records.  However, DCSA's conclusory justifications utterly fail to meet the law's requirements to specifically describe the nature of the document, the relative positions of the author(s) and recipient(s), and the decision to which they purportedly relate.

**Third**, the agency states it is withholding some information under Exemption 7(E), which covers law enforcement records that would disclose techniques or procedures in a way that could reasonably be expected to risk circumvention of the law.  But the information being withheld pursuant to this exemption is whether Teixeira's name came up in a search of a known Federal Bureau of Investigation database.  That yes-or-no answer does not provide any non-public information about the existence or capabilities of that FBI database, let alone any information that someone could use to circumvent the law.

**Fourth**, DCSA asserts it is withholding information provided by the Treasury Department that is exempt from disclosure under the Bank Secrecy Act.  DCSA's descriptions of its withholdings, however, do not provide enough detail to show that only Bank Secrecy Act information is being withheld pursuant to this exemption.

**Fifth**, DCSA has not met its statutory burden to show that releasing information it claims is covered by discretionary exemptions would foreseeably harm the interests those exemptions

protect.  The agency's boilerplate, conclusory statements fall far short of what the law requires: a concrete explanation of how the release of these specific records would harm the interests protected by the claimed exemptions.  The most absurd example in the current record is the two news articles in Teixeira's file, which already are available to the public, and the release of which could pose no foreseeable harm to anyone's personal privacy.

**Sixth**, the agency also has failed to show that it cannot reasonably segregate and release non-exempt information from any information that is actually exempt from disclosure.  Again, DCSA's conclusory claims to have performed this analysis are belied by its descriptions of the records themselves, which indicate they contain a substantial amount of information that is not exempt.

 For the reasons set forth below, this Court should deny DCSA's Motion for Summary Judgment; grant the *Post*'s Cross-Motion for Summary Judgment; and issue an order requiring the release of the requested records or directing DCSA to provide the records to the Court for *in camera* review to determine which records of portions thereof must be released.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.      Teixeira's Leaks, Arrest and Prosecution

Federal agents arrested Teixeira on April 13, 2023 as reports circulated online and in the news media regarding a massive leak of classified information emanating from Discord, a social media platform popular with video gamers that allows users to create "servers" in which participants can chat amongst themselves.  Mem. and Order on Detention at 5, *United States v. Teixeira*, No. 1:23-cr-10159-IT (D. Mass. filed May 22, 2023) (Dkt. 37), attached as Exhibit 1 to the Declaration of Matthew E. Kelley ("Kelley Decl."); *see also* Compl. ¶ 9 & nn. 1-2.

A June 2023 indictment charged Teixeira with six felony counts for retaining and transmitting national defense information.  *See* Indictment, *United States v. Teixeira*, No. 1:23-cr-10159-IT (D. Mass. filed June 15, 2023) (Dkt. 48), attached as Kelley Decl. Ex. 2.  According to the indictment, Teixeira disclosed highly classified information including sensitive U.S. intelligence regarding the Russia-Ukraine war; a plot by a foreign adversary to target U.S. forces abroad; and a description of a foreign government's shifts in policy and attempts to repair its relations with the United States.  *See id.* at 6-8.

Seeking to keep Teixeira behind bars before trial, prosecutors told the Court that Teixeira "is responsible for one of the largest leaks of classified information in United States history, and, in that regard, will be known in the same breath as Edward Snowden."  Gov't Opp. to Def.'s Appeal of Magistrate Judge's Order on Detention at 19, *United States v. Teixeira*, No. 1:23-cr-10159-IT (D. Mass. filed Aug. 4, 2023) (Dkt. 87), Kelley Decl. Ex. 3.  In that and other filings seeking pretrial detention, prosecutors cited disturbing details about Teixeira's background calling into question his suitability for a security clearance in the first place.  *See* Compl. ¶ 12.  For example, in a factual proffer the Government explained that in 2018 Teixeira was suspended from high school after "a classmate overheard him make remarks about weapons, including Molotov cocktails, guns at the school, and racial threats."  Gov't [Second] Supp'l Mot. in Support of Pretrial Detention at 5, *United States v. Teixeira*, No. 1:23-cr-10159-IT (D. Mass. filed May 17, 2023) (Dkt. 34), Kelley Decl. Ex. 4.

Because of that incident, his hometown police department denied Teixeira's applications for a firearms identification card in 2018 and 2019.  *Id.*  The Government attached to its proffer a copy of a letter Teixeira wrote to local authorities in support of his successful re-application for a

firearms card in 2020.  *Id.*  In it, Teixeira wrote that he discussed the high school incident with

the investigator responsible for his background check:

> Everything was explained to the investigator about the incident as well as police reports, school letters and any or all documents that were submitted to the investigator that were generated from this event. I was very concerned that my decisions that I made at 16 would haunt my future in serving my country in the military and am glad they did not.

*Id.* Attachment F at 1 (p. 32 of PDF).  Prosecutors argued this was part of a pattern of Teixeira

concealing and downplaying the troubling aspects of his past:

> [W]hile the Defendant may have provided carefully curated information to his background investigator about the "misunderstanding" in high school, he certainly did not reveal—and potentially took action to actively conceal—the significant volume of racist, antisemitic, and violent rhetoric he posted online lest his true nature and character prevent him from achieving his objective.

*Id.* at 7-8.

U.S. Magistrate Judge David H. Hennessy agreed with prosecutors and ordered

Teixeira's pretrial detention, citing among other reasons Teixeira's suspension from high school

and his "unhealthy interest in [guns'] use in domestic mass shootings."  Kelley Decl. Ex. 1 at 16.

Judge Hennessy held that pretrial detention was necessary to protect national security, noting that

"[g]iven the publicity this prosecution has received, there is no speculation in recognizing that

foreign nations are aware" that Teixeira had a TS/SCI security clearance and was accused of

leaking highly classified information online.  *Id.* at 19.

On March 4, 2024, Teixeira pleaded guilty to all six felony counts in his indictment for

Willful Retention and Transmission of National Defense Information in violation of 18 U.S.C. §

793(e).  *See* Plea Agreement, *United States v. Teixeira*, No. 1:23-cr-10159-IT (D. Mass. filed

March 4, 2024) (Dkt. 130), Kelley Decl. Ex. 5.  He agreed to a sentencing range of between 132

months and 200 months (11 years and 16 years, eight months) in prison.  *Id.* at 4.  Teixeira's

sentencing is scheduled for September 27, 2024.

## II.     The *Post*'s FOIA Request

To serve the public's interest in understanding how someone with Teixeira's background could gain a high-level security clearance, *Post* national security reporter Alex Horton filed a FOIA request with DCSA on August 8, 2023 (the "Request"), seeking expedited processing and release of the following public records:

a. All records relating to or mentioning the background investigation for the security clearance of [Massachusetts Air National Guard] Airman First Class Jack Teixeira.

b. Any records relating to or mentioning . . .  the adjudication of Airman First Class Jack Teixeira's security clearance.

c. Any records relating to Airman First Class Jack Teixeira that contain the name of the company that conducted investigation(s) and/or adjudication(s) of Airman First Class Jack Teixeira's security clearance and/or that contain the name of the investigator that conducted investigation(s) and/or (adjudications) of Airman First Class Jack Teixeira's security clearance.

Compl. ¶ 13 & Ex. A.

Horton explained the strong public interest in the requested public records, which would inform the "ongoing public debate over whether the U.S. government is properly vetting personnel to have access to top secret information, and if failures within the system are a threat to U.S. national security, following the appearance that clearance background investigators failed to find or disclose potentially disqualifying information about Teixeira." *Id.* ¶ 14.  The Request also noted that "there are credible claims, including by Rep. Jim Himes and other lawmakers, that aspects of the government's activity in failing to properly vet Teixeira for a security clearance [are] improper." *Id.*

## III.    DCSA's Response and the *Post*'s Administrative Appeal

DCSA Supervisory Government Information Specialist Christina F. Bianco responded to the Request on September 14, 2023, stating that DCSA had located 109 pages of responsive

records and that the agency was withholding them in their entirety pursuant to FOIA Exemptions

6 and 7(C).  *See* Compl. Ex. B at 1.  In that initial response, Bianco asserted a substantial privacy

interest in the records, which she said are "inherently related to law enforcement."  *Id.*  Bianco

said the records "contain[] information on and references to individuals interviewed as

investigative sources whose link to the official inquiry may be the result of 'mere happenstance'

or the identities of law enforcement personnel who perform clerical or administrative duties,"

and also "contain information that is 'practically obscure.'"  *Id.*  Bianco also asserted that DCSA

had balanced the interests involved and considered the foreseeable harm that could result from

releasing the records.  *Id.*

The *Post* administratively appealed the denial of its Request on September 21, 2023.

Compl. ¶ 18.  DCSA did not provide a determination of the appeal within the statutory deadline.

*Id.* ¶ 20.

## IV.    This Lawsuit

The *Post* filed this lawsuit on November 11, 2023.  *See generally* Compl.  Pursuant to

this Court's scheduling order, on June 18, 2024 DCSA moved for summary judgment.

DCSA asserts that it performed a reasonable search for responsive records[1] and properly

withheld the records in full pursuant to FOIA Exemptions 6 and 7(C).  DCSA Mem. at 4-9.

Although it did not cite any other exemptions in its initial denial, DCSA also states that it is

withholding certain information under Exemptions 5, 7(E) and 3.  *Id.* at 9-17.  The agency also

argues that it properly determined that no non-exempt information in the responsive records

could be segregated and released.  *Id.* at 17-18.

---

[1] The *Post* is not challenging the adequacy of the search.

The *Post* now cross-moves for summary judgment on the grounds that DCSA's blanket withholdings are improper and its justifications are insufficient to meet FOIA's strict requirements.

## ARGUMENT

### I.     STANDARD OF REVIEW

Under the familiar legal standard, a party is entitled to summary judgment when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. *E.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In a FOIA case, a court must review the record *de novo* to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (citation omitted). Summary judgment for the government is proper only if its filings "describe the justifications for nondisclosure with <u>reasonably specific</u> detail, demonstrate that the information withheld <u>logically</u> falls within the claimed exemption, and are <u>not controverted</u> by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (emphases added).

Because FOIA "provides a way for persons to obtain information about the conduct of their government," the statute's "provisions are generally to be construed liberally," and its exemptions "are to be construed narrowly." *Leopold v. DOJ*, 94 F.4th 33, 36-37 (D.C. Cir. 2024). The government, therefore, "bears the burden of proving that an exemption applies." *Bartko v. DOJ*, 898 F.3d 51, 62 (D.C. Cir. 2018). Under the 2016 amendments to FOIA, the government also "bears the burden of showing that it 'reasonably foresees that disclosure would

harm an interest protected by an exemption' or that 'disclosure is prohibited by law.'" *Leopold*, 94 F.4th at 37 (citations omitted).

## II.     DCSA'S WITHHOLDING RESPONSIVE RECORDS IS UNJUSTIFIED

DCSA has not satisfied its burden to justify its blanket withholding of all of Teixeira's background investigation records.  Regarding Exemptions 6 and 7(C), the agency has not shown that it properly balanced the public's strong interest in learning about the deeply flawed process that allowed Teixeira access to classified information against any privacy interest Teixeira has. For Exemption 5, DCSA has not provided the explanation necessary to justify its invocation of the deliberative process privilege.  Nor has DCSA properly justified its invocation of Exemption 7(E) to withhold imprecise information about an FBI database.  Finally, DCSA has not described the portions of records it is withholding pursuant to Exemption 3 with the particularity necessary to evaluate whether those withholdings are overbroad.

Further, DCSA's filings in support of summary judgment suffer from fundamental deficiencies that call into question all of its assertions.  Not only did the agency belatedly invoke three exemptions beyond those for privacy, on summary judgment it offers merely the kind of conclusory, boilerplate assertions that are insufficient to meet the law's requirements for detail and precision in its descriptions of the foreseeable harm it concluded would result from release. Similarly, DCSA has failed to support its conclusion that no information could be segregated from legitimately exempt information.  Perhaps most troubling is DCSA's withholding of two publicly available news articles without offering any justification whatsoever.

### A.  The Teixeira Records Cannot Be Withheld Under Exemptions 6 and 7(C)

From the beginning, DCSA has asserted that it is withholding all 109 pages of responsive records pursuant to FOIA's privacy exemptions, 6 and 7(C).  *See* Compl. ¶¶ 15-16.  Exemption 6

allows records to be withheld only if they are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 7(C) similarly authorizes an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).[2]  Where the government claims both exemptions, courts focus on Exemption 7(C) because it is more protective of personal privacy than Exemption 6 and therefore "establishes a lower bar for withholding material." *ACLU I*, 655 F.3d at 6.

FOIA's privacy exemptions "require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'" *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 158 (D.D.C. 2017) (quoting *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)).  The public interest side of the balance requires consideration of the extent to which the disclosure would advance "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny,'" thus furthering "the citizens' right to be informed about 'what their government is up to.'"  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (citations omitted).  The D.C. Circuit has stressed that "[a]t all times, courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory

---

[2] The D.C. Circuit has held that background investigation records qualify as law enforcement records for FOIA Exemption 7.  *See Mittleman v. Office of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996).

exemptions, which are exclusive, are to be narrowly construed." *ACLU I*, 655 F.3d at 5 (cleaned up).

The public interest in the records of Teixeira's security clearance investigation and adjudication is both compelling and obvious.  The public has an interest in learning about how DCSA conducts its security clearance investigations and adjudications in general, and in particular why and how DCSA approved a high-level security clearance for someone with Teixeira's disturbing background.  Federal prosecutors have indicated in public court records that a dangerous and irresponsible young man with an unhealthy interest in guns and a total disdain for his oaths to protect the United States was able to fool the system meant to protect against such security threats.  Kelley Decl. Ex. 4 at 7-8.  The D.C. Circuit has recognized the public's "interest in knowing that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate . . . and that those who are accountable are dealt with in an appropriate manner."  *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984).  So too, here.  The public interest in learning more about what its government was up to in this massive national security breach is a weighty one.

DCSA gives this interest the back of its hand, asserting that the public interest in understanding how background investigations are conducted would not be well served by releasing the records at issue here, which it claims would provide "minimal insight" into its performance of its duties.  DCSA Mem. at 9.  The agency's argument ignores the specific context of the records at issue.  The records of Teixeira's clearance investigation and adjudication will shed light on DCSA's performance of its duties in clearing him for his sensitive position, as federal prosecutors have implied that Teixeira was able to mislead a background investigator about the high school incident and conceal his violent and racist online postings.

This is not a case where "nothing to see here, move along" is the appropriate response to public inquiry.

On the other side of the equation are the personal privacy interests that Exemptions 6 and 7(C) were enacted to protect. Because of its application in the law enforcement context, the primary interest Exemption 7(C) protects is an individual's interest in avoiding the embarrassment, reputational harm and other negative consequences of being publicly associated with an investigation of criminal activity. *See, e.g.*, *Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011). DCSA flips this concern on its head, arguing that Teixeira has a heightened privacy interest in keeping these records secret, "as the release of his files and corresponding public scrutiny and speculation could hinder the ongoing criminal proceeding and Teixeira's defense." DCSA Mem. at 9.

That argument simply makes no sense. At the time of the Request, Teixeira's name had been publicly linked not just with run-of-the-mill criminal activity, but to one of the worst breaches of national security in U.S. history. *See* Compl. ¶¶ 9-12 & nn. 1-8. Since then, he has pleaded guilty to those crimes; he has no defense to "hinder." There is nothing secret about the fact that Teixeira had to pass a background investigation to obtain the security clearance that facilitated his crimes. Being associated with that background investigation does not itself tie to Teixeira to any criminal activity. DCSA has not suggested that it is conducting any ongoing investigation, and Teixeira's plea bargain and adjudication of guilt shows any investigation is now over. Teixeira's suspension from high school for making comments about guns and explosives also is a matter of public record available to anyone with an internet connection.

The D.C. Circuit has repeatedly recognized that people who have been convicted of crimes have only a minimal privacy interest in keeping secret records relating to those crimes,

particularly when facts about the convictions are publicly available.  *E.g.*, *ACLU I*, 655 F.3d at 7

(convicted criminals' privacy interests in information regarding their convictions are

"substantially weaker than the privacy interests of individuals who have been investigated but

never publicly charged at all").  For example, the D.C. Circuit held that an Assistant U.S.

Attorney accused of misconduct and referred to the Justice Department's Office of Professional

Responsibility by both the Fourth Circuit and his own office had "substantially diminished"

privacy interests in records about those alleged misdeeds.  *Bartko*, 898 F.3d at 69.  There, as

here, "[a]ny interest [the subject of the investigation] might have had in keeping his name in the

free-and-clear has already largely evaporated."  *Id.*; *see also ACLU I*, 655 F.3d at 9 ("The fact

that information about these proceedings is readily available to the public reduces further still the

incursion on privacy resulting from disclosure.").  In short, Teixeira's non-existent, or at best,

miniscule, privacy interests in his background investigation files pale in comparison to the

immense public interest in learning more about how he obtained his security clearance.

  DCSA also invokes the privacy interests of other individuals identified in the records,

such as people interviewed as part of the investigation and the subject's relatives and personal

contacts.  *See* Decl. of C. Bianco ("Bianco Decl.") ¶ 8 (Dkt. 16-2); DCSA Mem. at 8.  It is

settled law that, although Exemption 7(C) "may authorize the redaction of the names and

identifying information of private citizens mentioned in law enforcement files, it does not permit

an agency 'to exempt from disclosure all of the material in an investigatory record solely on the

grounds that the record includes some information which identifies a private citizen or provides

that person's name and address.'"  *Citizens for Responsibility & Ethics in Washington v. DOJ*,

746 F.3d 1082, 1094 (D.C. Cir. 2014) (citation omitted).  Consequently, courts "regularly require

agencies to disclose information that some may deem personal, so long as strategic redactions

14

are used to stop readers from linking those records to any particular person." *Inst. for Justice v. IRS*, 547 F. Supp. 3d 1, 6 (D.D.C. 2021).  Thus, to the extent that there are individuals named in the records whose privacy interests outweigh the public interests involved, their identities should be protected by targeted redactions, not blanket withholding.

The Request also sought documents showing the name of the government contractor(s) involved in Teixeira's clearance investigation and adjudication.  Compl. Ex. A.  While not specifically addressed by DCSA, the privacy interests of any contractors involved also would be outweighed by the public interest in learning about Teixeira's background check.  FOIA's exemption for personal privacy "cannot be invoked 'to protect the concerns of a contractor who would be embarrassed by disclosure of his responsibility for shoddy work.'" *Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 43 (D.D.C. 2019) (quoting *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980)).  Further, the identities of any corporate entities involved in the process cannot be withheld pursuant to Exemption 7(C) because corporations do not have personal privacy interests.  *FCC v. AT&T Inc.*, 562 U.S. 397, 409-10 (2011) ("The protection in FOIA against disclosure of law enforcement information on the ground that it would constitute an unwarranted invasion of personal privacy does not extend to corporations.").

The clearest example of DCSA's improper use of the privacy exemptions is its claim that Exemptions 6 and 7(C) permit the withholding of two news articles DCSA describes as "[p]ublicly available information gathered as part of the continuous evaluation program."  DCSA Vaughn Index at 4 (Dkt. 16-3).  Tellingly, DCSA has not asserted any reason the privacy exemptions would apply:  the "basis for withholding" column in the Vaughn index is blank for these two entries.  One is described as an NBC News article from April 13, 2023, the day of

Teixeira's arrest.  Those details are sufficient to easily determine the article that is likely being withheld.  *See* Ken Dilanian, Michael Kosnar & Rebecca Shabad, *FBI arrests 21-year-old Air National Guardsman suspected of leaking classified documents*, NBC News (Apr. 13, 2023), https://www.nbcnews.com/politics/national-security/us-officials-identify-leaked-classified-documents-suspect-21-year-old-rcna79577, Kelley Decl. Ex. 6.  In other words, DCSA itself characterizes these documents as news reports available to the public, yet is withholding them in full based on a nonexistent privacy interest.  FOIA prohibits such gamesmanship.

Because the public's interest in learning more about the background check that gave a future leaker access to classified information far outweighs any minimal privacy interest Teixeira may have, DCSA's blanket withholdings under Exemptions 6 and 7(C) are improper.  The records should be released.

### B.  The Records Cannot Be Withheld Under Exemptions 5, 7(E) or 3

Although it only invoked the privacy exemptions in its denial of the Request, on summary judgment the agency asserts three additional exemptions that it claims justify withholding portions of the responsive records:  Exemption 5, which allows withholding of records that would be unavailable to an opponent in civil litigation; Exemption 7(E), which allows withholding of information regarding confidential law enforcement techniques; and Exemption 3, which requires withholding of information that is otherwise exempt from disclosure by statute.  None of these exemptions are properly justified.

### i.  DCSA Has Failed to Justify Its Withholdings Under Exemption 5

DCSA claims that the deliberative process privilege under Exemption 5 allows it to withhold two, two-page documents described as a "DOD CAF TECT Consultation Form" and an "Executive Summary."  DCSA Vaughn at 4; DCSA Mem. at 12; Bianco Decl. ¶ 13.  To invoke

the deliberative process privilege, and, by extension, Exemption 5, the defendant agency must establish that the material at issue is both "predecisional and deliberative," meaning that it was "generated before the adoption of an agency policy" and "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  "At a minimum, the agency must provide three basic pieces of information in order for the deliberative-process privilege to apply: (1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013).  "Without such specificity, 'a court cannot decide, one way or the other, a deliberative process privilege claim.'" *Lawyers' Comm. for Civil Rights Under Law v. DOJ*, No. 18-cv-167 (EGS/GMH), 2020 U.S. Dist. LEXIS 246100, at *86-87 (D.D.C. Oct. 16, 2020) (citation omitted).

Here, DCSA has failed to provide any specific information for those three basic categories.  The agency's declarant describes the documents only as "predecisional deliberative communications and advisory opinions within intra-agency working documents maintained as part of A1C Teixeira's adjudicative file."  Bianco Decl. ¶ 13.

DCSA's Vaughn index describes the first document as an "[i]nternal communication between adjudicator and subject matter representative seeking professional insight."  DCSA Vaughn at 4.  But it does not explain what "professional insight" was sought, how it related to any decision involved, nor whether the adjudicator outranked the expert, they were equals, or the expert held a higher rank.  The description of the second document is even less enlightening: it is listed as a "[r]eport prepared by CAS seeking advise [sic] from agency officials and General

Counsel on a course of action."  DCSA Vaughn at 4.  Again, this vague explanation contains none of the basic information required to satisfy the privilege.

Further, "agency communications containing purely factual material are generally not protected by" the deliberative process privilege.  *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).  Thus, "Exemption 5 disputes can often be resolved by the simple test that factual material must be disclosed but advice and recommendations may [in some circumstances] be withheld."  *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988).  DCSA has made no apparent attempt to identify and produce the factual information in the documents it claims are protected by the deliberative process privilege.  To the contrary, it does not mention this requirement to release factual information at all.

DCSA has failed to provide the specifics necessary to evaluate its claim of the deliberative process privilege, and therefore has not met its burden to demonstrate that Exemption 5 applies.

### ii.  Exemption 7(E) Does Not Apply

DCSA asserts it is withholding some portion of the records pursuant to Exemption 7(E), which covers information in law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  DCSA invokes Exemption 7(E) for portions of four documents:  "Case Closing Transmittal" records dated February 9, 2020 and May 4, 2020; a "Content Summary Sheet" also dated May 4, 2020; and an undated "Investigative Results Report."  DCSA Vaughn at 1-3.

DCSA's declaration indicates that the only data withheld under Exemption 7(E) were "the results of a search conducted with the FBI through their National Name Check Program

(NNCP), now known as the Enterprise Vetting Center – Branch 1 Records (EVC-B1), commonly referred to as a "name check" search."  Bianco Decl. ¶ 15.  The declaration describes the results of the name check search as "either 'positive' (i.e., denominated as 'Record') or negative (i.e., denominated as 'No Record.')"  *Id.*  DCSA argues that this information – whether or not a search of a particular FBI database found anything – would "reveal whether an individual or his conduct is of investigative interest, or conversely, whether such conduct has gone undetected by the FBI, providing insight into the type, scope or manner of conducting FBI investigations."  DCSA Mem. at 15.

Without any details regarding what information is in the FBI database or how and where the FBI obtains it, however, simply knowing whether or not a search of Texiera's name returned a "Record" does not reveal anything about the FBI database or how DCSA uses it.  In other words, the yes/no answer described in the Bianco Declaration does not indicate what information would lead to a "hit" in the name search database or whether such information exists regarding Teixeira that is not included in the database.  Knowing the answer in this circumstance does not illuminate what the question is.  DCSA thus has failed to meet its burden to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (cleaned up).

DCSA's Memorandum states that the agency also is withholding under Exemption 7(E) "internal review comments that designated Teixeira's investigation for additional review," arguing that the basis for and information supporting that determination "would provide insight into the particular process by which the Agency conducts its investigations," thereby "allow[ing] individuals to 'game' the system and determine exactly how to avoid such scrutiny."  DCSA

Mem. at 16.  This explanation also is too vague and generalized to provide the required logical link between release of the information and circumvention of the law.

### iii.   To the Extent Exemption 3 Applies, It Must Be Applied Narrowly

DCSA's other newfound justification for withholding is that some of the records include the results of a query to the Treasury Department's Financial Crimes Enforcement Network ("FinCEN"), which are shielded by the Bank Secrecy Act.  While that statute does justify withholding the financial information it covers, like all other FOIA exemptions, Exemption 3 must be applied narrowly, and the government bears the burden of showing that the exemption applies.  *Am. Oversight v. Dep't of Homeland Sec.*, No. 1:21-cv-3030-TNM, 2023 U.S. Dist. LEXIS 156688, at *6 (D.D.C. Sep. 5, 2023).

That means that only the specific information covered by the Bank Secrecy Act can be withheld under Exemption 3, nothing more.  However, DCSA's declaration and Vaughn index fail to identify precisely which portions of the records at issue contain information covered by the Bank Secrecy Act.  DCSA must describe those records of portions of records more precisely to allow the *Post* and the Court to determine that the exemption does indeed apply and DCSA is not withholding more than the statute covers.

### C.  DCSA Did Not Meet Its Burden to Demonstrate Foreseeable Harm

One fundamental problem with DCSA's arguments on summary judgment is that the agency has failed to meet its burden to show foreseeable harm caused by the release of the responsive records.  Having failed to meet this requirement, DCSA cannot justify the majority of its withholdings.

In 2016, Congress passed the FOIA Improvement Act, which places an additional burden on agencies when withholding information subject to discretionary exemptions, such as

20

Exemptions 5, 6, and 7, which DCSA invokes here.[3]  *See Pinson v. DOJ*, 236 F. Supp. 3d 338,

359 (D.D.C. 2017).  The Act provides that an agency may only withhold information if "(I) the

agency reasonably foresees that disclosure would harm an interest protected by an exemption . . .

or (II) disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  "Agencies cannot rely on

mere speculative or abstract fears, or fear of embarrassment to withhold information." *Reporters*

*Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (internal marks

omitted).  Rather, the "foreseeable harm" requirement "imposes an independent and meaningful

burden on agencies" to "concretely explain how disclosure 'would' – not 'could' – adversely

impair" an interest the exemption protects. *Id.* at 369-70 (internal marks omitted); *see also*

*Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019) ("[A]n agency

must release a record—even if it falls within a FOIA exemption—if releasing the record would

not reasonably harm an exemption-protected interest[.]").

To carry their burden under this "foreseeable harm" requirement, agencies must "identify

specific harms to the relevant protected interests that it can reasonably foresee would actually

ensue from disclosure of the withheld materials and connect the harms in a meaningful way to

the information withheld." *Ctr. For Investigative Reporting v. U.S. Customs & Border Prot.*,

436 F. Supp. 3d 90, 106 (D.D.C. 2019) (internal marks omitted).  The law requires agencies to

"provide 'a focused and concrete demonstration of why disclosure of the particular type of

material at issue will, in the specific context of the agency action at issue, actually impede' the

interests protected by a FOIA exemption." *Leopold*, 94 F.4th at 37 (citation omitted).  Neither

"boilerplate and generic assertions" nor "wholly generalized and conclusory" statements will do.

*Id.* (citation omitted).

---

[3] The foreseeable harm requirement does not apply to Exemption 3.  *Leopold*, 94 F.4th at 37.

DCSA's descriptions of its foreseeable harm analyses fail to meet those standards.  The agency merely refers to its arguments regarding the application of the exemptions as support for the conclusion that foreseeable harm would result from release.  *See, e.g.*, Bianco Decl. ¶ 9 (asserting her office "conducted the requisite foreseeable harm analysis . . . and for those reasons mentioned determined that the disclosure of A1C Teixeira's investigative and adjudicative files would cause him an unwarranted invasion of personal privacy"); *id.* ¶ 16 ("The requisite foreseeable harm analysis has been conducted in the application of exemption (b)(7)(e).  For the reasons stated above, disclosure would risk circumvention of the law by providing some insight into the type or scope of FBI investigations.").  For example, DCSA's purported foreseeable harm analysis for Exemption 5 merely regurgitates the generic justifications for the deliberative process privilege: that release of those records "would inhibit the future exchange of [deliberative] information if the adjudicative personnel undertaking those deliberations believed the comments and/or recommendations they make might be released to . . . the public at large." *Id.* ¶ 14.

Further, DCSA is withholding records that are <u>not</u> exempt under any provision of FOIA: the two publicly available news articles.  Bianco Decl. ¶ 6; Vaughn at 4.  DCSA has not explained, nor could it, how it could lawfully withhold open-source news articles, let alone what harm could foreseeably arise from releasing them.

DCSA's circular reasoning and withholding of clearly non-exempt materials shows that it has not met its burden to show that releasing the records it claims are subject to discretionary exemptions would foreseeably cause harm to the interests those exemptions protect.

### D.  DCSA Withheld Reasonably Segregable, Non-Exempt Information

Even if the Court were to find that DCSA has carried its burden to demonstrate that some portion(s) of some record(s) could be withheld, FOIA still requires that "[a]ny reasonably segregable portion" of the records be produced "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  To withhold any requested document in its entirety, therefore, an agency "must demonstrate that it cannot segregate the exempt material from the non-exempt." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003) (citing *Kimberlin v. DOJ*, 139 F.3d 944, 949-50 (D.C. Cir. 1998)).  "[A] blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability." *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004); *see also Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) ("[I]f the Air Force decides to continue in its claim that the non-exempt material in these documents is not reasonably segregable . . . , it must provide a more detailed justification than the conclusory statements it has offered to date.").  Instead, "[t]o justify withholding a document in full, an agency must show with reasonable specificity why the document cannot be further segregated, or why the document is not reasonably segregable – for example, because the nonexempt material would be an essentially meaningless set of words and phrases." *EPIC v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 311, 315 (D.D.C. 2013) (cleaned up).

DCSA's purported justification for its blanket withholdings is insufficient.  DCSA only states in conclusory fashion that "no meaningful information could be disclosed without also disclosing exempt information."  DCSA Mem. at 18; Bianco Decl. ¶ 17.  This is not the required "detailed justification" for withholding records in full.  *See Mead*, 566 F.2d at 261.

DCSA asserts that it is "entitled to a presumption that it fulfilled its segregation duty when it so swears, and that presumption can only be overcome by some 'quantum of evidence' credibly put forward by the requester." DCSA Mem. at 18 (citing *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). Assuming *arguendo* that a conclusory declaration like DCSA's is entitled to the presumption, the *Post* has provided this Court with strong evidence to the contrary: DCSA's withholding of two publicly available news articles. *See supra* at 15-16. It is patently absurd to believe that nothing in publicly available news articles could be disclosed without also disclosing information covered by Exemptions 6 and 7(C), particularly given that the agency's Vaughn index specifically identifies one of the articles as an NBC News report on the date of Teixeira's arrest. DCSA Vaughn at 4; *see also* Kelley Decl. Ex. 6.

DCSA's failure to properly segregate non-exempt material, as well as its inadequate justifications for doing so, provide additional reasons to deny its Motion for Summary Judgment and grant the *Post*'s cross-motion.

## CONCLUSION

For all of the foregoing reasons, Plaintiff WP Company LLC, d/b/a *The Washington Post*, respectfully requests that this Court grant its Cross-Motion for Summary Judgment, deny Defendant's Motion for Summary Judgment, and enter an order directing DCSA to release all responsive records, or, in the alternative, directing DCSA to produce the responsive records to the Court for an *in camera* review to determine which records and/or portions of records must be released.

Dated:  July 8, 2024                    Respectfully submitted,

                                        BALLARD SPAHR LLP

                                        */s/Matthew E. Kelley*
                                        Charles D. Tobin (#455593)
                                        Matthew E. Kelley (#1018126)
                                        1909 K Street, NW, 12th Floor
                                        Washington, DC 20006
                                        Telephone: (202) 661-2200
                                        Fax: (202) 661-2299
                                        tobinc@ballardspahr.com
                                        kelleym@ballardspahr.com

                                        *Counsel for Plaintiff WP Company LLC*
                                        *d/b/a The Washington Post*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused the foregoing to be filed and served electronically via the Court's ECF system upon counsel of record.


Dated:  July 8, 2024                    */s/Matthew E. Kelley*
                                        Matthew E. Kelley

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WP COMPANY LLC**<br>**d/b/a THE WASHINGTON POST,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**DEFENSE COUNTERINTELLIGENCE AND**<br>**SECURITY AGENCY,**<br><br>       **Defendant.** | **Case No. 1:23-cv-3333** |

## [PROPOSED] ORDER

Upon consideration of Plaintiff's motion for an order to the Parties to meet and confer and submit a joint proposed schedule for briefing or production, and for good cause shown, it is hereby

ORDERED that the motion is GRANTED; and it is further

ORDERED that counsel for Defendant shall meet and confer with Plaintiff's counsel on or before January 18, 2024; and it is further

ORDERED that the Parties shall file a joint proposed schedule for briefing or production on or before January 19, 2024.

SO ORDERED:


_____
DATED

_____
Hon. Timothy J. Kelly
U.S. District Judge

1