IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WP COMPANY LLC**<br>**d/b/a THE WASHINGTON POST,**<br><br>     **Plaintiff,**<br><br>          v.<br><br>**DEFENSE COUNTERINTELLIGENCE AND**<br>**SECURITY AGENCY,**<br><br>     **Defendant.** | Case No. 1:23-cv-3333 |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

DCSA's Response in opposition to the *Post*'s cross-motion for summary judgment (Dkt. 21) fails to show either that the agency is entitled to summary judgment or that the *Post*'s cross-motion should be denied. The agency misreads the law in an unsuccessful attempt to address the two fundamental flaws in its position: its failure to meet the statutory requirements that it identify the foreseeable harm that would result from releasing the requested records and that it segregate and produce all non-exempt portions of those documents. Compounding these errors, DCSA mischaracterizes the *Post*'s arguments and relies on a series of red herrings in a vain attempt to justify its improper blanket withholdings of the responsive records pursuant to privacy exemptions 6 and 7(C). DCSA does not explain away its failures to adequately support its withholdings pursuant to the deliberative process privilege or to analyze what factual information is not subject to the privilege and must be released. Finally, the agency cannot counter its failure to provide a declaration that sufficiently supports its withholdings under Exemption 7(E).

Because of all of these defects in DCSA's arguments, the *Post* respectfully suggests that the best course of action would be for the Court to conduct an *in camera* review of the relatively

limited number of responsive records to determine what may be withheld and what must be released.

## ARGUMENT

### I.  DCSA Failed to Meet Its Statutory Burden to Identify Foreseeable Harm

In its Memorandum in support of its cross-motion for summary judgment (Dkt. 18), the *Post* demonstrated that DCSA had not met its burden to comply with the statutory command that it only withhold information under a discretionary exemption if it "reasonably foresees that disclosure would harm an interest protected by an exemption." Mem. at 21 (quoting 5 U.S.C. § 552(a)(8)(A)(i)). DCSA's Response does not contradict that showing.

Here, the agency's declaration is precisely – nearly word-for-word – the kind of language the D.C. Circuit has held does not meet an agency's burden to show foreseeable harm. In *Reporters Committee for Freedom of the Press v. FBI*, the D.C. Circuit held that the following language in an FBI declaration was insufficient to meet the foreseeable harm requirement:

> Disclosure of [material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations] would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

3 F.4th 350, 370 (D.C. Cir. 2021). The D.C. Circuit also found inadequate the Justice Department Office of Inspector General's "sweeping assertion" that

> requir[ing] disclosure of the withheld information would prevent the [agency] from engaging in meaningful documented discussion about policy matters in the future, which could have a negative effect on agency decision-making, and would potentially confuse the public about the reasons for the [agency's] actions in this matter.

*Id.* at 371 (calling this language "*precisely* the kind of boilerplate, unparticularized, and hypothesized assertion of harm that . . . would be insufficient") (emphasis in original).

In this case, DCSA's description of its foreseeable harm analysis is no different. Regarding records withheld under a claim of the deliberative process privilege, for example, DCSA's declarant states that releasing the records

> would inhibit the future exchange of such information if the adjudicative personnel undertaking those deliberations believed the comments and/or recommendations they make might be released to the subject of that adjudication or, as in this case, the public at large. Any uncertainty in the confidentiality of the information exchanged will create a chilling effect in the adjudicative process undermining that discretion committed to the DCSA . . . Furthermore, the recommendations and comments therein may not be the agency's final position on the adjudication of that individual and to release that information might create confusion undermining the vetting process.

Bianco Decl. ¶ 14. As in *Reporters Committee*, DCSA's declaration here is merely "mouthing the generic rationale for the deliberative process privilege itself." 3 F.4th at 370. The *Post* showed in its Memorandum that the rest of DCSA's foreseeable harm analyses are similarly generic and therefore inadequate. *See* Mem. at 22.

DCSA's Response fails to meaningfully address its burden under the foreseeable harm standard.[1] *See* Resp. at 8. To the contrary, DCSA falsely suggests that the *Post* had the burden to show "what more the Agency could do to demonstrate foreseeability without giving away the protected information." *Id.* But the D.C. Circuit reiterated earlier this year that "the foreseeable harm requirement imposes an independent and meaningful burden *on agencies*." *Leopold v. United States DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting *Reporters Committee*, 3 F.4th at 369) (cleaned up) (emphasis added). DCSA failed to meet that burden.

---

[1] DCSA reiterates that withholdings pursuant to Exemption 3 are not subject to the foreseeable harm requirement, Resp. at 7-8, despite the fact that the *Post* acknowledged that aspect of the statute, *see* Mem. at 21 & n.1.

Because DCSA failed to meet its burden to show foreseeable harm, it has not justified its wholesale withholding of all of the records in Teixeira's files.

## II.     DCSA Did Not Perform a Proper Segregability Analysis

A related fundamental shortcoming of DCSA's blanket withholdings it its failure to separate and produce those portions of the withheld records that are not subject to any FOIA exemption, as the statute requires. Mem. at 23 (citing 5 U.S.C. § 552(b)). The *Post* showed in its Memorandum that DCSA did not "demonstrate that it cannot segregate the exempt material from the non-exempt." *Id.* (citing *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003)).

In its Response, DCSA repeats its contention that it is entitled to a presumption that is complied with the segregability requirements merely because it provided a declaration saying so. Resp. at 9. That argument ignores the D.C. Circuit's repeated instruction that an agency is entitled to the presumption only where its declaration is "'relatively detailed and non-conclusory.'" *Watkins Law & Advocacy, PLLC v. United States*, 78 F.4th 436, 450 (D.C. Cir. 2023) (citation omitted). Here, DCSA's declarant merely states that "[n]o meaningful information from the records withheld can be made without disclosing information entitled to protection under the FOIA." Bianco Decl. ¶ 17. That vague and unsupported assertion does not entitle DCSA to any presumption, nor would it be sufficient to satisfy FOIA's requirements in any event. *See Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (agency claiming non-exempt material is not reasonably segregable "must provide a more detailed justification than [its] conclusory statements").

The *Post* demonstrated an additional reason that DCSA's declaration is not entitled to any deference: its contention is belied by the fact that the agency is withholding in full two publicly available news articles. Mem. at 24 (citing DCSA Vaughn at 4). DCSA argues for the first time,

4

and without citation to any authority whatsoever, that "the Agency's decision to consider those particular articles and possibly to take action based on those articles, all speak to the Agency's investigative process." Resp. at 9. Regardless of whether that statement is true, it is beside the point.[2] DCSA is not withholding the articles under the theory that their release would lay bare the inner workings of its investigative process. The sole basis for DCSA's withholding of the two articles is the assertion that they are subject to privacy Exemptions 6 and 7(C). *See* DCSA Vaughn at 4. The agency cannot withhold the news articles on this basis because nothing in a publicly available news article could be called "private" under any reasonable definition of that word.

The D.C. Circuit recently explained that when Congress added the foreseeable harm requirement to FOIA in 2016, it re-emphasized the requirement that non-exempt material must be segregated and produced. *Leopold*, 94 F.4th at 37 (noting that 5 U.S.C. § 552(a)(8)(A)(ii)(I)-(II) requires agencies to "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible" and to "take reasonable steps necessary to segregate and release nonexempt information"). Thus, "[e]ven if an exemption covers an entire agency record, the agency still must release any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects." *Id.*

DCSA's failure to perform adequate analyses of foreseeable harm and segregability means that <u>none</u> of its blanket withholdings have been properly justified. The *Post* therefore respectfully requests that this Court conduct an *in camera* review to determine which non-exempt portions of the records must be released.

---

[2] The fact that the DCSA Vaughn index makes one of the articles easily identifiable further undermines any contention that it may be withheld. *See* Mem. at 15-16; Kelley Decl. Ex. 6.

5

### III.  DCSA Did Not Properly Withhold Records Under to Exemptions 6 and 7(C)

The *Post* established in its Memorandum that DCSA improperly invoked FOIA's privacy exemptions, 6 and 7(C), to withhold all responsive records in full.  Mem. at 10-16.  DCSA's Response misrepresents the *Post*'s arguments and misapplies the balancing test used to determine whether an individual's privacy interests outweigh the public interest in the records.  *See* Resp. at 6-7.

In attempting to justify its improper blanket withholdings, DCSA mischaracterizes the strong public interest in the records at issue.  DCSA quotes the *Post*'s statement that the public has a general interest in learning how DCSA conducts its security clearance investigations and adjudications.  *Id.* at 6 (quoting Mem. at 12).  But DCSA omits the remainder of the quoted sentence, which asserts the public's interest in learning "*in particular* why and how DCSA approved a high-level security clearance for someone with Teixeira's disturbing background."  Mem. at 12 (emphasis added).  Contrary to DCSA's contention, the *Post* did not offer only "generalized statements" to demonstrate a significant public interest.  Resp. at 6,

DCSA offers several other red herrings to obscure the flaws in its arguments.  The agency points to the irrelevant fact that Teixeira had not pleaded guilty at the time the *Post* requested the records, claiming that his "personal interest in obtaining a favorable outcome at sentencing is strongly tied to his privacy interests in the withholding of these records."  Resp. at 7.  Notably, DCSA does not cite any support for these propositions, nor does it meaningfully engage with the case law the *Post* cited demonstrating that those who have been convicted of crimes have diminished privacy interests.  *See* Mem. at 13-14.

Another DCSA red herring is its contention that the *Post* was required to, but did not, "establish more than a bare suspicion" that DCSA officials acted improperly.  Resp. at 7 (quoting

6

*Judicial Watch, Inc. v. Dep't of State*, 282 F. Supp. 3d 36, 45 (D.D.C. 2017)).  Here, the *Post* has done so by citing the contention by federal prosecutors that Teixeira misled his background investigator about his suspension from high school and other red flags in his background.  *See* Mem. at 6, 12.

Citing *Judicial Watch*, DCSA offers a third red herring:  the idea that the records of Teixeira's background investigation and adjudication would not provide any significant insight into the agency's operations.  Resp. at 6.  *Judicial Watch* is inapposite, however.  There, the plaintiff had requested a summary of the results of a security clearance investigation performed by another agency – the State Department's Bureau of Diplomatic Security – where the requester admitted it was primarily interested in information about the subject of the investigation rather than how the investigation was conducted.  282 F. Supp. 3d at 45.  Here, the *Post*'s purpose for its Request is to inform public debate regarding whether there are flaws in the military's background check system that endanger national security.  *See* Mem. at 7 (citing the Request).  Unlike the single record at issue in *Judicial Watch*, the records at issue here include the results of record searches and source interviews, DCSA Vaughn at 3; communications among DCSA officials "seeking professional insight," *id.* at 4; a report seeking advice from agency officials regarding a course of action, *id.*; and two publicly available news articles, *id.*

DCSA's assertion that the records would provide minimal insight also is in considerable tension with its assertions that releasing factual information in the records would reveal its decision-making process, Resp. at 3, and that the withheld news articles also would reveal its investigative process, *id.* at 9.  DCSA cannot have it both ways.

7

In sum, DCSA has not shown that it is properly withholding all responsive records under Exemptions 6 and 7(C).³  To the contrary, the *Post* has demonstrated that the public interest in disclosure outweighs Teixeira's privacy interests regarding at least some portions of those records.

## IV. The Agency Did Not Properly Withhold Records Pursuant to Exemption 5

The *Post* showed in its Memorandum that DCSA had neither provided the specifics needed to evaluate its privilege claims nor attempted to segregate purely factual material from deliberative documents, as required.  *See* Mem. at 16-18.  The Response does not resolve these problems.

The *Post* explained that courts need three specific pieces of information to evaluate a deliberative process privilege claim: "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient."  Mem. at 17 (quoting *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013)).  In its Response, DCSA asserts that *National Secuirty Counselors* is inapposite because "there were potentially multiple deliberative processes at play in that case," and asserts that in this case "[t]here is only one deliberative process at issue: the manner in which the Agency conducts security investigations." Resp. at 3.

Contrary to DCSA's contention, however, references in DCSA's declaration to some indeterminate "adjudicative" activity that occurred after Teixeira obtained his security clearance do not specify the precise deliberative process involved.  *See* Bianco Decl. ¶ 13.  Nor does describing the records as "seeking professional insight" and "seeking advise [sic] . . . on a course

---

³ The *Post* reiterates that information identifying private citizens and other clearly exempt personal information such as Social Security numbers can be protected by targeted redactions rather than wholesale withholding.  *See* Mem. at 14-15 (citing *Inst. for Justice v. IRS*, 547 F. Supp. 3d 1, 6 (D.D.C. 2021).

8

of action," explain the function and significance of these records in that "adjudicative" process. *See* DCSA Vaughn at 4. DCSA has not even attempted to describe the decision-making authority vested in the authors and recipients, who the agency describes vaguely as an "adjudicator," "subject matter representatives," and "agency officials and General Counsel." *Id.* The agency's descriptions simply miss the mark.

Similarly, DCSA's only response to its failure to segregate purely factual information is to cite caselaw stating that an agency may withhold purely factual material if it "would reveal an agency's decision-making process." Resp. at 3 (quoting *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)). But DCSA's declarant never asserted – even in conclusory fashion – that it could not disclose factual material without revealing its decision-making process. And DCSA provides no support whatsoever for its bald assertion that its "security investigation of an individual is a textbook example of such a situation, where even the factual material is appropriately withheld." *Id.* at 4.

Having failed to properly explain either the context of the withheld information or how factual material could not be segregated and released, DCSA cannot rely on Exemption 5 to withhold the records at issue.

### V.     DCSA Did Not Properly Withhold Records Pursuant to Exemption 7(E)

As with all FOIA exemptions, an agency withholding records under Exemption 7(E) for information that would risk circumvention of the law must support its withholding with a sworn statement that shows with "reasonable specificity" that the exemption applies. *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 586 (D.C. Cir. 2020). The *Post* demonstrated in its Memorandum that DCSA's supporting declaration did not provide the requisite specificity to "demonstrate logically how the release of the requested information might create a risk of

9

circumvention of the law." *See* Mem. at 19 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). DCSA's Response leans on the fact that District Courts in two other cases have held that agencies can withhold results of an FBI "name check" search under Exemption 7(E) and its claim it adequately described the reason for withholding of "internal comments relating to additional review based on collected information." Resp. at 4-5. DCSA still has not met the requisite standard.

The fact that <u>other</u> courts have found <u>other</u> agencies' <u>other</u> declarations sufficient to justify withholding FBI name check results under Exemption 7(E) does not relieve DCSA of its burden to do so. As the *Post* noted, DCSA's declaration described the name check results as either "positive," meaning there was information about the person in the FBI database, or "negative," meaning the opposite. Mem. at 19 (citing Bianco Decl. ¶ 15). The Bianco Declaration states that this information would "reveal whether an individual is of an investigative interest to the FBI, and also that conduct of the subject that might be of investigative interest (were there hypothetically such conduct) has gone undetected by the FBI, thereby providing some insight to the type or scope of FBI investigations and risk circumvention of the law." Bianco Decl. ¶ 15.

That is not specific enough to evaluate whether releasing the results of the specific name check search on Teixeira would risk circumvention of the law. DCSA does not connect the dots that would explain how knowing that the FBI did or did not have information about Teixeira would allow anyone to thwart the effectiveness of that FBI database, particularly without any indication of what conduct by Teixeira the FBI had purportedly monitored or ignored.

DCSA also asserts that it withheld under Exemption 7(E) internal comments flagging Teixeira's file for additional review. Resp. at 4. But the agency's declaration never mentions

10

those statements. *See* Bianco Decl. ¶¶ 15-16. DCSA thus has not provided the requisite evidentiary support for its invocation of Exemption 7(E) for that information.

### VI.   *In Camera* Review is Necessary

A court may appropriately issue an order in a FOIA case directing the agency to release specific non-exempt materials and/or to conduct a proper analysis of which records should be released. *See, e.g.*, *WP Co. v. Dep't of Def.*, 626 F. Supp. 3d 69, 86 (D.D.C. 2022) (rejecting defendants' Exemption 6 claim and ordering defendants to "conduct an individualized assessment of the public and private interests with respect [to] the names of" former service members that defendants had withheld). The *Post* respectfully submits that this is not such a case, and that an *in camera* review of the limited number of responsive records is justified.

DCSA's failure to conduct proper analyses of foreseeable harm and segregability, as well as its mischaracterizations of the law and the *Post*'s arguments, indicate that an independent review by this Court is necessary. Fortunately, this case involves a relatively small volume of responsive records – 19 documents spanning 120 pages. *See* DCSA Vaughn. Rather than ordering DCSA to release the records it should have released in the first instance, which would likely lead to yet another round of summary judgment briefing, an *in camera* review would resolve the disputes.

### CONCLUSION

For all of the foregoing reasons, and for all of the reasons stated in its Memorandum, Plaintiff WP Company LLC, d/b/a *The Washington Post*, respectfully requests that this Court grant its Cross-Motion for Summary Judgment, deny Defendant's Motion for Summary Judgment, and enter an order directing DCSA to produce the responsive records to the Court for an *in camera* review to determine which records and/or portions of records must be released.

Dated: July 31, 2024　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　BALLARD SPAHR LLP

　　　　　　　　　　　　　　　　　*/s/Matthew E. Kelley*
　　　　　　　　　　　　　　　　　Charles D. Tobin (#455593)
　　　　　　　　　　　　　　　　　Matthew E. Kelley (#1018126)
　　　　　　　　　　　　　　　　　1909 K Street, NW, 12th Floor
　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　Telephone: (202) 661-2200
　　　　　　　　　　　　　　　　　Fax: (202) 661-2299
　　　　　　　　　　　　　　　　　tobinc@ballardspahr.com
　　　　　　　　　　　　　　　　　kelleym@ballardspahr.com

　　　　　　　　　　　　　　　　　*Counsel for Plaintiff WP Company LLC*
　　　　　　　　　　　　　　　　　*d/b/a The Washington Post*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on this date, I caused the foregoing to be filed and served electronically via the Court's ECF system upon counsel of record.

Dated:  July 31, 2024                */s/Matthew E. Kelley*
                                                Matthew E. Kelley